[No. 25138-4-I.   Division One.   July 1, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNY BRANNON SUTTLE III, *Appellant.*

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

AGID, J.—Johnny Suttle appeals his judgment and sentence for first degree armed robbery. He claims that the trial court erred when it (1) ruled his prior convictions for burglary and robbery admissible under ER 609(a)(2); (2) ruled his status as an escapee admissible as evidence of motive and identity under ER 403 and 404(b); and (3)

ordered him to pay $100 for the victim assessment fund as part of his sentence. We affirm.

On May 23, 1989, two men entered a 7–Eleven store in Bothell and robbed the store at gunpoint. Three men were arrested on May 26, 1989, and charged with the robbery: Johnny Suttle, Ron Ivy and Chris Hunter.

The State's main witnesses were Chris Hunter and Kelly Ivy, Ron Ivy's wife. Both testified that shortly before the robbery, Suttle, Hunter and Ron Ivy began to plan a robbery while all four were driving back from Ellensburg. Kelly Ivy testified that she asked to be taken home before the robbery because she did not want to be involved. She further testified that both Suttle and her husband later told her that they went into the store and robbed it, that her husband had a sawed off shotgun, that Suttle had a knife, and that Hunter waited outside in the car while Ron Ivy and Suttle went into the store.

Hunter testified that he met Suttle and Ron Ivy for the first time on the trip to Ellensburg and that he drove Ron Ivy and Suttle to the 7–Eleven. He explained that both Ron Ivy and Suttle went into the store while he waited in the car, that Ron Ivy described the robbery to Hunter after Ivy and Suttle came out, and that Suttle gave Hunter $50 from the robbery. Although Hunter was initially charged with first degree robbery, the charges were reduced to rendering criminal assistance in exchange for a plea and his agreement to testify at Suttle's trial.

Ramona Hulse, the store clerk working at the time of the robbery and the only eyewitness, gave a statement to police immediately after the robbery. According to the statement, Hulse told police that one robber was taller than the other, the shorter robber had a mustache and the taller one did not have any facial hair. A few days after the robbery, the police showed Hulse two photographic montages. Hulse identified Ron Ivy as one of the robbers and a man not involved in the 7–Eleven robbery as looking "similar" to the other robber. Neither montage included a photograph

of Suttle.[1] At trial, Hulse was unable to identify Suttle as one of the robbers.

Ron Ivy testified as a defense witness. He admitted committing the robbery, but stated that his accomplice was Hunter, not Suttle. Ivy testified that he and Hunter dropped Suttle off before they got to the 7–Eleven because Suttle did not want to be involved, and that the shotgun used during the robbery belonged to Hunter. When asked why he told his wife, Kelly Ivy, that Suttle, and not Hunter, robbed the store with him, Ron Ivy testified that Hunter did not want Kelly Ivy to know that Hunter had been involved.

Before trial, defense counsel moved in limine to exclude any mention that Suttle had escaped from a work–release program at the time of the robbery. The State argued that this evidence was admissible under ER 404(b) to show motive and identity. The judge granted Suttle's motion, but said that the State could make an offer of proof as to its relevance and move for reconsideration during trial. During trial, the State made an offer of proof through Hunter as to the relevance of Suttle's escape status.[2] The trial judge sustained defense counsel's motion in limine but again stated that he would be open to reconsideration.

After the State rested, the State advised defense counsel that it intended to impeach Suttle with a 1979 second degree robbery conviction and a 1987 first degree burglary conviction if Suttle testified. The State argued to the trial court that these two offenses were of a "crimen falsi" nature and thus per se admissible for impeachment purposes under ER 609(a)(2) without weighing their probative value against their prejudicial effect. The trial court agreed

---

[1] A detective had started to prepare a lineup that included Suttle, but was told by the prosecutor to cancel the lineup because other witnesses agreed to testify that Suttle had been involved.

[2] Hunter testified that he did not know Ron Ivy or Suttle were escapees until after Hunter had been arrested and that Hunter drove them to the 7–Eleven because Ivy and Suttle wanted to leave town and go back to California.

and defense counsel objected for the record. The State then asked the court to reconsider its earlier ruling excluding evidence of Suttle's escape status, arguing that the prejudicial effect of this evidence would be greatly reduced now that evidence of Suttle's prior convictions would be introduced. The trial court agreed.

Defense counsel advised the trial court that Suttle would not testify in light of the court's ruling that it would allow evidence that Suttle was an escapee. As an offer of proof, defense counsel told the court that Suttle was prepared to testify that he had been in the car with Ron Ivy and Hunter on May 23, 1989, that they let him out before the 7–Eleven because Suttle did not want to be involved, that Ivy and Hunter robbed the 7–Eleven, and that they picked him up on the road after the robbery. The State informed the court that it would not offer evidence of Suttle's escape status unless Suttle testified. Suttle did not testify, and neither the escape evidence nor the prior convictions was admitted into evidence. The jury found Suttle guilty of first degree robbery while armed with a deadly weapon. The trial court sentenced Suttle to 101 months in prison and ordered him to pay $100 under the victim's crime and compensation act. The court later denied Suttle's motion for a new trial. This appeal followed.

## PRIOR CONVICTIONS UNDER ER 609

Suttle first contends that the trial court erred in ruling that his prior convictions for burglary and robbery were per se admissible under ER 609(a)(2).[3] We need not reach this issue, however, because we find that Suttle waived his

---

[3]Under ER 609(a)(2), a defendant's prior convictions are per se admissible for impeachment purposes when the crimes involved "dishonesty or false statement". *State v. Jones,* 101 Wn.2d 113, 120, 677 P.2d 131 (1984). For example, the Supreme Court has recently held crimes of theft involve dishonesty and are therefore per se admissible under ER 609(a)(2). *State v. Ray,* 116 Wn.2d 531, 806 P.2d 1220 (1991). Other crimes are admissible only if (a) they are felonies; and (b) the court finds that their probative value outweighs their prejudicial effect. *Jones,* 101 Wn.2d at 120.

objection to the admission of his prior convictions by failing to properly preserve the issue for appellate review.[4]

A criminal defendant has not properly preserved for appellate review a trial court's ruling admitting his prior convictions under ER 609(a) when the defendant's decision not to testify is based on other grounds. *State v. McLean,* 58 Wn. App. 422, 793 P.2d 459 (1990).[5] In *McLean,* the defendant assigned error to the trial court's ruling that four of his five prior convictions were per se admissible under ER 609(a)(2). The *McLean* court agreed that three of the defendant's four priors were not per se admissible under ER 609(a)(2), but that one of the priors was. Although he conceded on appeal that his prior forgery conviction was per se admissible under ER 609(a)(2), the defendant, in making his offer of proof, had stated that he would testify only if the trial court ruled *all* of the priors inadmissible. The *McLean* court reasoned that, because the defendant's decision not to testify was based on his desire not to have *any* prior convictions admitted rather than on the trial court's erroneous ruling, the propriety of that ruling was "immaterial". The court therefore held that the defendant had not properly preserved the claimed error for review. 58 Wn. App. at 426.

The same situation exists here. The record reflects that Suttle chose not to testify because the trial court decided to admit evidence of Suttle's escape status, not because the court ruled that Suttle's prior convictions were admissible

---

[4]Therefore, we also need not address Suttle's contention that the convictions were also inadmissible under ER 609(a)(1) as a matter of discretion.

[5]In *State v. Brown,* 113 Wn.2d 520, 540, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989), the court held that a criminal defendant must take the stand and testify in order to preserve for appellate review a trial court ruling on the admissibility of prior convictions under ER 609(a). However, the *Brown* court also held that this ruling would apply prospectively from the date the opinion was filed. 113 Wn.2d at 544. *Brown* was filed on October 31, 1989. Suttle was tried before that date, on October 24 and 25, 1989. Thus, *Brown* does not control here, and Suttle was not required to take the stand and testify in order to preserve the alleged ER 609(a) error for appellate review.

for impeachment purposes. After the court decided to admit both the prior convictions and the escape evidence, defense counsel advised the trial court:

> Your Honor, my client was prepared, had he testified, to, you know, acknowledge the Robbery Second Degree and the Burglary First Degree, but in light of the Court's ruling, he's not going to testify.

That "the Court's ruling" refers to the trial court's ruling on the escape evidence and not to its ruling on Suttle's priors is clear from defense counsel's later statement, made during the offer of proof: "But we feel that this evidence of escape status is just too prejudicial to risk it." Thus, as in *McLean,* the trial court's ruling on the admissibility of defendant's prior convictions is immaterial because Suttle's decision not to testify was based not on the State's threatened impeachment under ER 609(a), but on other unrelated grounds. Under *McLean,* therefore, we conclude that Suttle did not properly preserve the claimed error for appellate review.

ESCAPE EVIDENCE UNDER ER 404(b) AND ER 403

Under ER 404(b)[6] and ER 403,[7] Suttle next argues that the trial court erred in ruling admissible evidence that Suttle was an escapee at the time of the robbery in order to show identity and motive.

Defense counsel's pretrial motion in limine to exclude evidence that Suttle was an escapee from a work–release program at the time of the robbery was based on ER 404(b) and ER 403. As noted above, the trial judge twice sustained defense counsel's motion to exclude this evidence because

---

[6]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[7]Under ER 403, relevant evidence may nevertheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice".

of his concern that the prejudicial effect of the escape evidence would outweigh its probative value. After ruling that the State could impeach Suttle with his prior convictions, however, the trial judge ruled that the escape evidence was admissible. This ruling was based on two factors. First, because Ron Ivy testified that Hunter and not Suttle was his accomplice, identity had become a much more important issue in the case. Second, the ruling that Suttle could be impeached with his prior convictions reduced the prejudicial effect of the escape testimony.

Although we held above that Suttle waived his objection to the admission of his prior convictions under ER 609, we assume for purposes of analyzing the admissibility of the escape evidence that the trial court improperly ruled that the convictions were admissible to impeach Suttle had he testified. Thus, the issue becomes whether, under ER 404(b) and ER 403, the trial court erred in ruling the escape evidence admissible assuming that the ameliorating factor on which the court relied—the jury's knowledge of Suttle's prior convictions—was not available to reduce the prejudice to the defendant.

■■ Whether evidence of a defendant's prior "bad acts" is admissible under ER 404(b) is largely within the sound discretion of the trial court. The court's ruling will not be reversed absent a showing of abuse of discretion. *State v. Lynch,* 58 Wn. App. 83, 87, 792 P.2d 167, *review denied,* 115 Wn.2d 1020 (1990). Although evidence of a defendant's prior "bad acts" is not admissible to establish his character or to show that he acted in conformity with that character, such evidence may be admissible for other purposes, such as to show motive, intent or identity. *See* ER 404(b). The trial court must identify for the record the purpose for which the State seeks to introduce the evidence and determine whether it is relevant to prove an essential element of the crime charged. *State v. Smith,* 106 Wn.2d 772, 776, 725 P.2d 951 (1986). In determining relevance, (1) the purpose for which the evidence is offered must be of

consequence to the outcome of the action and (2) the evidence must tend to make the existence of the identified fact more probable. After the court has made its relevance determination, it must then balance the probative value of the evidence against its prejudicial effect pursuant to ER 403. *Smith,* 106 Wn.2d at 776.

Although this appears to be an issue of first impression in Washington, several cases from other jurisdictions have held that evidence of a defendant's escape status is admissible under ER 404(b) as evidence of motive and identity.[8] In this case, we agree with the State that evidence that Suttle had escaped from a work–release program with Ron Ivy was relevant to show motive and identity.

While the escape evidence would not have been admissible in the State's case in chief, the defense put motive in issue when their witness, Ron Ivy, testified that it was Hunter rather than Suttle who robbed the store with Ivy. At that point, the question of which one of them was more likely to have been Ivy's partner in the robbery became the central issue. Once the defense implicated Hunter in the robbery, Suttle's escape status became relevant to motive. The jury was then entitled to consider whether Suttle, having recently escaped from a work–release program, needed

---

[8]*See, e.g., United States v. Stover,* 565 F.2d 1010, 1013 (8th Cir. 1977) (evidence that defendant had escaped from prison admissible in trial for car theft to show that defendant was in vicinity where car was stolen and that defendant had motive and intent to steal it); *State v. Libberton,* 141 Ariz. 132, 685 P.2d 1284, 1289–90 (1984) (although evidence that defendant had escaped from work–furlough program essentially informed jury of defendant's prior convictions, evidence was nevertheless relevant to show motive for crimes, specifically increased need to steal car and money); *State v. Bray,* 321 N.C. 663, 365 S.E.2d 571, 578–79 (1988) (in trial for theft, robbery and murder, evidence that defendant assaulted warden and escaped from jail was admissible to show intent and motive, that is, that defendant did whatever he needed to avoid capture). The courts in these cases allowed evidence of a defendant's escape status even when, as here, the defendant did not testify and evidence of the defendant's prior convictions was therefore not admitted. In this case, of course, the evidence of Suttle's escape status was never before the jury.

to get out of Washington to avoid detection, and therefore had a more compelling need for money than Hunter.[9]

We also conclude that Suttle's escape status was relevant to identity. Ron Ivy and Suttle had escaped together. This fact made it more likely that Ivy had committed the robbery with Suttle, whom Ivy had known for several months, than with Hunter, whom he had met the day of the robbery. Our analysis of the identity issue is similar to the court's analysis in *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983), *overruled on other grounds in State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989). In *Pam,* the court ruled that evidence that the defendant had been previously incarcerated with an eyewitness to a robbery was relevant to establish the robber's identity under ER 404(b). The eyewitness had initially been reluctant to identify the defendant in a photo montage because they had been in jail together and the witness was afraid of being labeled a "'snitch'". 98 Wn.2d at 759–60. The State sought to introduce this evidence to establish the witness' credibility with regard to his identification of the defendant. Finding that the eyewitness' incarceration with the defendant was relevant for that purpose, the court held that the evidence was admissible to show identity. 98 Wn.2d at 760.

Here, evidence that Suttle had escaped from a work–release program with Ivy was also relevant to identity

---

[9]*State v. LeFever,* 102 Wn.2d 777, 785, 690 P.2d 574 (1984), *overruled on other grounds in State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989), upon which Suttle relies, is distinguishable. In *LeFever,* the Supreme Court held that the trial court erred in allowing evidence of the defendant's heroin addiction as proof of motive in a robbery case where the primary issue was whether the defendant or some unknown third person had committed the crime and where the State's witnesses differed greatly in terms of their eyewitness testimony. In the case at bar, however, the issue became which of two identified individuals, Suttle or Hunter, had committed the robbery with Ivy. Here the escape evidence was relevant to allow the jury to compare the motives of two *known* potential suspects. In *LeFever* the jury was presented with evidence of the defendant's addiction in a vacuum, not for the purpose of distinguishing him from the other suspect in the same crime.

because it established the relationship between Suttle and Ivy and their commonality of interest. In contrasting Suttle and Ivy's relationship with that of Ivy and Hunter, whom Ivy barely knew, the jury could reasonably have concluded that Ivy was more likely to have committed the robbery with Suttle. Thus, the evidence that Suttle and Ivy had escaped together, like the evidence in *Pam* that the defendant and eyewitness had been incarcerated together, was relevant to show the existence and nature of their relationship which, in turn, was probative of the robber's identity.[10]

The trial court's ruling admitting the escape evidence must also withstand an ER 403 analysis. We continue to assume for purposes of this analysis that the defendant's prior convictions were inadmissible and thus not available to lessen the prejudicial impact of the escape evidence. As a threshold matter it must be understood that all testimony sought to be elicited against a criminal defendant is prejudicial. The question under ER 403 is whether the evidence was so unduly prejudicial as to outweigh its probative effect. Given the nature of the issue raised by the defense, which greatly enhanced the probative value of the escape evidence, it cannot be said that the evidence was so unduly prejudicial that the State should not have been permitted to introduce that evidence to rebut Ivy's testimony that Hunter, not Suttle, committed the robbery with Ivy. There was no error in the trial court's ruling that evidence of the escape was admissible to rebut Ivy's testimony.

---

[10]Suttle argues that the escape evidence was not admissible to show identity because the robber's method of committing the crime in question was not so similar to methods used by Suttle in committing prior crimes that the robbery could be deemed a "signature crime". *See State v. Coe*, 101 Wn.2d 772, 684 P.2d 668 (1984). We agree that a "signature crime" analysis is neither relevant nor appropriate here. However, as our discussion of *Pam* indicates, prior "bad acts" evidence may be admitted under ER 404(b) when that evidence is probative of identity for other reasons, and its admissibility is not limited to "signature crimes".

## Assessment of Costs

Suttle finally argues that the trial court erred in ordering him to pay $100 for the victim assessment fund as part of his sentence without determining whether Suttle had a present or future ability to pay. We disagree.[11]

■ Under RCW 7.68.035(1), the trial court is required to order the defendant's contribution to the victim assessment fund.[12] In *State v. Hayes,* 56 Wn. App. 451, 783 P.2d 1130 (1989), the court held that the trial court erred in ordering the defendant to pay court costs ($101), attorney fees ($447), and contribute to a drug fund ($100) and a victim assessment fund ($70). The *Hayes* court held that the trial court should have entered specific findings on the defendant's ability to pay, his financial resources, and the likelihood that his indigency status would change. Just this term, however, we decided *State v. Eisenman,* 61 Wn. App. 246, 810 P.2d 55 (1991), in which the *Hayes* finding that there was no distinction between attorney fees and contributions to a victim assessment fund was called into question. We held in *Eisenman* that the trial court is not required to make formal findings that the defendant is able to pay court–imposed fees or costs when their imposition does not infringe on the right to counsel and the amount is minimal. We found the $100 victim penalty assessment to be of such a minimal nature. Because the prosecutor had requested that Eisenman pay attorney fees and the court had denied that request, we also found that the trial court had impliedly concluded that Eisenman had the ability to pay the $100 fee. 61 Wn. App. at 250.

---

[11]Although the trial court ordered restitution during the sentencing hearing, the order indicates that the restitution was to be as established by separate order. No such restitution order appears in the designated papers, and appellant's counsel does not specifically address the restitution issue in his brief. Thus, whether the court acted properly in ordering restitution is not before us.

[12]RCW 7.68.035(1) states in part: "[T]here *shall* be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case". (Italics ours.)

Like Eisenman, Suttle was assessed a $100 victim penalty assessment. Suttle's attorney fees and court costs were requested by the prosecutor and disallowed by the court, just as they were in *Eisenman.* Thus, we conclude as we did there that the trial court impliedly found that Suttle had an ability to pay the $100 for the victim assessment fund. We emphasize, however, that if Suttle truly cannot pay such a court–imposed cost, or later is unable to pay, he will not be subject to incarceration. *State v. Barklind,* 87 Wn.2d 814, 819–20, 557 P.2d 314 (1976).

Affirmed.

FORREST and BAKER, JJ., concur.

Reconsideration denied July 26, 1991.