[No. 26279-3-I.   Division One.   December 18, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. SAMANTHA RAINELLE BENNETT, *Appellant*.

---

*Randolph L. Finney,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michele M. Shaw, Deputy,* for respondent.

AGID, J. — Samantha Bennett appeals the juvenile court's order imposing restitution in the amount of $1,000. Bennett contends that the trial judge abused her discretion in determining that the restitution could be paid out of her monthly Social Security checks even though Bennett has no control over the checks.

Bennett pleaded guilty to one count of second degree burglary. Bennett, then 14, and several other juveniles, had entered her mother's house without permission and taken property valued at about $9,000. The insurance company paid $7,772 of the victim's (Ms. Bennett) claim. Her out-of-pocket expenses approximate $1,800.

After Bennett's father died, Ms. Bennett began receiving Social Security checks on Bennett's behalf. After the burglary, DSHS took over as "representative payee" pending appointment of a guardian for Bennett. When the restitution hearing was held, Bennett had been living with her stepfather for several months. Although DSHS had not yet released the Social Security funds to the stepfather, he was expected to take over as representative payee. Bennett's guardian would receive $630 per month on her behalf.

At the restitution hearing, Bennett's caseworker testified that Bennett's prospects for earning money to repay her mother were dim because of her youth and lack of skills. While the trial judge acknowledged that Bennett would not be able to work and earn money in the foreseeable future, she determined that Bennett could pay the restitution out of her Social Security benefits. The judge further found that although she has no control over the checks issued to her guardian on her behalf, Bennett could ask her guardian for money to meet the obligation. The trial court ordered her to pay $1,000 restitution at a rate of $15 per month.[1]

Bennett first contends that the trial court abused its discretion in ordering restitution despite her express finding that Bennett lacked the ability to hold a "legitimate job". She further argues that her Social Security checks are not a legitimate source of payment because she has no control over how the checks are spent.

Under the restitution provisions of the Juvenile Justice Act of 1977, RCW 13.40.190, the court is required to impose restitution on the juvenile offender for loss or damage suffered by the victim. The court has discretion to determine the amount, terms and conditions of the restitution. Restitution may not, however, be imposed when

the respondent reasonably satisfies the court that he or she does not have the means to make full or partial restitution and could not reasonably acquire the means to pay such restitution.

---

[1] The trial court further ordered that Bennett and her coparticipants in the burglary were jointly and severally liable for payment.

RCW 13.40.190; *State v. Fellers*, 37 Wn. App. 613, 619-20, 683 P.2d 209 (1984).

■ The underlying purposes of the act's restitution provisions are victim compensation and juvenile accountability. *State v. Bush*, 34 Wn. App. 121, 124, 659 P.2d 1127, *review denied*, 99 Wn.2d 1017 (1983); *see also* RCW 13.40.010(2)(c), (h). Restitution primarily serves the goal of rehabilitation. *State v. Horner*, 53 Wn. App. 806, 808, 770 P.2d 1056 (1989).

■ ■ Our review of the trial court's restitution order is limited to whether the court abused its discretion. *Horner*, 53 Wn. App. at 807. An abuse of discretion occurs when the order is " ' "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons" '." *State v. Smith*, 33 Wn. App. 791, 798-99, 658 P.2d 1250 (quoting *State v. Cunningham*, 96 Wn.2d 31, 34, 633 P.2d 886 (1981)), *review denied*, 99 Wn.2d 1013 (1983).

■ We do not believe that the trial judge abused her discretion in this case. It is not disputed that, since Bennett's Social Security benefits are paid to her guardian, she will have to ask her guardian for money to pay the restitution. Defense counsel made no showing, however, that she probably would be unable to obtain $15 per month from her guardian in order to meet her obligation. The guardian is required to use the $630 checks for Bennett's benefit. *Fuller v. Fuller*, 49 Ohio App. 2d 223, 225-26, 360 N.E.2d 357, 359 (1976); *accord, Mask v. Mask*, 95 N.M. 229, 232, 620 P.2d 883, 886 (1980). The monthly benefit should amply provide for Bennett's basic necessities, leaving some portion for entertainment and other more discretionary uses. Thus, requiring her to pay $15 per month from funds given to her for nonnecessities is an excellent way of furthering the act's purpose of making juvenile offenders accountable for their actions.

In addition, Bennett's argument that she might not be able to use her Social Security benefits to make restitution is merely speculative at this point. *See State v. Curry*, 62 Wn. App. 676, 814 P.2d 1252 (1991); *State v. Baldwin*, 63 Wn. App. 303, 818 P.2d 1116 (1991). In *Curry*, we held that

the trial court was not required to make formal findings of fact regarding the defendant's ability to pay court-imposed costs because the statute allowing the court to impose costs[2] contained adequate procedural safeguards to protect the defendant's constitutional rights. *Curry*, 62 Wn. App. at 680-81; *see also State v. Eisenman*, 62 Wn. App. 640, 810 P.2d 55, 817 P.2d 867 (1991); *State v. Suttle*, 61 Wn. App. 703, 812 P.2d 119 (1991). Because the statute entitled the defendant to petition the court for modification or remission of the court-imposed costs if making payments imposed a manifest hardship on the defendant, RCW 10.01.160, there was no threat to the defendant's constitutional rights at the time of sentencing. *Curry*, 62 Wn. App. at 680-82. In *Baldwin*, the court similarly concluded that adequate procedural safeguards existed to protect the defendant's constitutional rights in the event that he was actually unable to pay the court-imposed costs and attorney fees. Holding that formal findings are not required as a predicate for imposing financial obligations on a defendant, the court reasoned that "the meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation," rather than at sentencing when his *"future* ability to pay is somewhat speculative". *Baldwin*, at 310, 311.

Significant procedural safeguards protect Bennett's constitutional interests in this case as well. RCW 13.40.190 requires the trial court to consider the defendant's claim

---

[2]Former RCW 10.01.160 states, in relevant part:

"(1) The court may require a convicted defendant to pay costs.

" . . . .

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170."

that she lacks the present and future ability to pay restitution. *Fellers*, 37 Wn. App. at 620.[3] Further, if Bennett's guardian is unwilling or unable to give her the funds to meet her restitution obligation, the restitution order can be modified. RCW 13.40.190(3). No sanctions will be imposed unless Bennett willfully refuses to comply with the order. RCW 13.40.200(1)-(3). We emphasize, as we did in *Eisenman* and *Suttle*, that Bennett's nonwillful failure to pay the court-ordered restitution would not subject her to incarceration. Moreover, as noted above, we see no reason to assume that she will be unable to satisfy her obligation out of her Social Security benefits. Such an assumption could only be based on speculation.

Next, Bennett contends that the trial court abused its discretion in refusing to determine whether she had a proprietary interest in any of the items taken from her mother's house. She claims that she had such an interest on the basis that her mother allegedly spent her Social Security checks to buy her own possessions. This argument lacks merit.

Restitution for injury to or loss of property is limited to damages that are "easily ascertainable". RCW 13.40-.020(17). To prove the extent of damages, the victim need only present evidence that "affords a reasonable basis for establishing the loss and does not subject the trier of fact to mere speculation or conjecture." *Horner*, 53 Wn. App. at 808. Precise determination is not required. 53 Wn. App. at 808. The loss need not be shown by proof beyond a reasonable doubt or clear and convincing evidence. *Smith*, 33 Wn. App. at 795-96.

Ms. Bennett gave the trial court a list of possessions that were stolen and the insurance company worksheets.[4] The

---

[3]Here, of course, the trial court did consider Bennett's ability to pay and determined that she could make restitution using her Social Security benefits.

[4]We perceive no reason to question the reliability of the insurance company's accounting of Ms. Bennett's loss, given an insurer's strong financial interest in not overpaying claims.

court adjusted the amount based on testimony that Ms. Bennett had recovered some of the items since the burglary. The burden then shifted to the defendant to identify which of the items she stole were bought with her Social Security benefits. She failed to do so. The trial court did not abuse its discretion in refusing to discount Ms. Bennett's damages.

We therefore affirm.

GROSSE, C.J., and KENNEDY, J., concur.