

FILED
COURT OF APPEALS
STATE OF WASHINGTON

2015 NOV 16 AM 10: 0

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72698-6-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| E.B.G. (D.O.B. 6/20/99), | ) ) | |
| Appellant. | ) | FILED: November 16, 2015 |
| | ) | |

APPELWICK, J. — E.B.G. appeals the juvenile court's order setting restitution. E.B.G. was convicted of residential burglary. E.B.G. argues that his due process rights were violated, because the State did not provide a reasonable basis to support the restitution award. We affirm.

## FACTS

E.B.G. was convicted of residential burglary in juvenile court after breaking into and taking items from Charles Oliver's house. The juvenile court entered an order of disposition requiring, among other things, a future restitution hearing. On October 30, 2014, the court held a restitution hearing.

At the restitution hearing, the State offered Oliver's victim loss claim form. The victim loss claim form stated that all unrecovered property and damaged claims had to be supported by receipts or ads for the same or a similar item. It

stated that unsupported values would not be accepted. Oliver attached a report from Homesite Home Insurance documenting an accounting of his insurance claims and Homesite's payments on those claims. Oliver signed the victim loss claim form. The form stated, "I declare under penalty of perjury, under the laws of the State of [sic] that the foregoing is a true and accurate accounting of my financial loss relating to this crime."

The Homesite report listed 27 items Oliver reported as stolen or damaged, Oliver's estimates of the value of the items, and Homesite's determination of the actual cash value of the loss. The items Oliver claimed as missing were eight pieces of jewelry, $2,000 cash that Oliver had borrowed from Prevail Credit, $5,200 in cash that his wife[1] received from unemployment benefits, a bejeweled end table, five sets of car keys, two designer suits, a pair of shoes, a music box, and two handbags. Oliver also claimed the cost to repair or replace damaged items: the cost to repair his glass door, the cost to repair a grandfather clock, the cost to replace a damaged Comcast cable box, and the cost to replace two damaged DVD players. Oliver's total reported cash value lost was $23,890.39 plus $1,804.02 to fix the glass door.

Homesite paid Oliver $1,304.02—the cost to fix his shattered glass door minus a $500 deductible. And, Homesite determined that Oliver's lost and damaged items were worth $21,886.11 after depreciation. But, it paid Oliver only

---

[1] Charles Oliver is the only victim listed on the victim loss claim form. But, Oliver's wife, Aloncita Monroe, was listed on Homesite's insurance documents, presumably because she was included on the policy. And, she was listed as a party to be paid, in addition to Oliver, on the final order setting restitution.

$6,893.43, because his loss exceeded his policy limit. On his victim loss statement, Oliver claimed $15,492.68 restitution for himself—the amount of damages minus depreciation that was not covered by Homesite—and $8,197.45 for Homesite—the amount they covered for the glass door repair and the lost and damaged items. Homesite sent Oliver letters informing him of how much of his loss was covered. Both letters stated in bold letters, "It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

While the State provided Oliver's victim loss statement with the attached insurance documents, the State did not provide any receipts or other substantiation for Oliver's requested restitution. Oliver testified at the restitution hearing. Oliver testified that although he did not provide the receipts to the State for restitution purposes, he had provided Homesite with some of the receipts. He testified under penalty of perjury that the list of items that he submitted to Homesite was a full and complete list of the items stolen from him or damaged during the burglary. He further testified that the estimates for repairs or replacement of the damaged and stolen items were accurate.

During cross-examination, because Oliver did not provide receipts for purposes of restitution, the defense asked Oliver to provide the sources of his estimates. For the jewelry, Oliver testified that he conducted internet searches to approximate the value of the pieces for which he did not have receipts. He testified

that his price estimates were "really lowball." The defense attempted to disprove Oliver's lowball estimates by providing an internet printout of one of the claimed items that was being sold online—a lion's head ring. Oliver valued the lion's head ring at $2,190 and an internet retailer valued it at $1,299.

For the cash requests, Oliver testified that the $2,000 request was the remainder of a $2,500 loan that he had taken out from his credit union in order to purchase a washer and dryer. Oliver did not have proof of the loan. For the $5,200 in cash, Oliver testified that it represented unemployment benefits that his wife had been saving. Oliver also had no proof of the source of the unemployment benefits. For the cost of replacing the stolen car keys, Oliver testified that he had given receipts to the insurance company, but did not save the paperwork.

Oliver was generally frustrated by the questioning, reminding defense counsel that he was the victim and stating that he no longer wished to think about the incident. He reiterated that he was declaring under penalty of perjury that the damage he claimed in his victim loss claim was an accurate accounting of his financial loss.

After Oliver's testimony, the court asked some additional questions. The court commented that it was troubled by Oliver's inability to provide documentation, reasoning that most people would document the loss if they had already done so for the insurance company. But, it opined that it gives victims who make insurance claims the benefit of the doubt, because they declare under penalty of perjury to the insurance company that they are honestly reporting their losses, and because

4

it is a criminal offense to make a false insurance claim. The court also noted that it had no controverting evidence from E.B.G. that he did not steal the items in question.

As a result, the juvenile court concluded that the State carried its burden with respect to the majority of the items. But, it stated that it had reservations as to some of the items. Specifically, it stated that for the $2,000 cash loan, Oliver's wife's $5,200 in unemployment benefits in cash, and the replacement of the car keys, the State had not sufficiently met its burden. Consequently, it left the matter open and gave the State two weeks to provide the court additional documentation supporting all three claims. Additionally, the court decided to order restitution in the amount of $1,299 for the lion's head ring instead of the $2,190 Oliver requested. Because the juvenile court kept part of the restitution hearing open for the State to provide further documentation, it reserved entering a final restitution order.

On November 20, 2014, the juvenile court entered an order setting restitution that did not include the reserved items. Ostensibly, Oliver failed to supply the requested documentation. The order setting restitution awarded Oliver and his wife $7,401.68 and it awarded Homesite $6,096.49.[2] E.B.G. appeals.

---

[2] The juvenile court ordered that E.B.G. pay the $13,498.17 restitution amount jointly and severally with another defendant who also participated in the burglary.

5

DISCUSSION

E.B.G. makes two arguments on appeal. First, E.B.G. argues that the juvenile court's restitution order violated due process, because the evidence presented was unreliable and did not provide a reasonable basis for estimating Oliver's loss. He claims that the evidence the State provided required the juvenile court to improperly engage in speculation or conjecture. E.B.G. also asserts that the juvenile court erroneously shifted the burden of proof to E.B.G. to disprove the State's restitution claim.

The authority to impose restitution in a juvenile case is controlled by statute. State v. Hiett, 154 Wn.2d 560, 563, 115 P.3d 274 (2005). The Juvenile Justice Act of 1977 (JJA) mandates that in a dispositional order, the court "shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent." RCW 13.40.190(1)(a). The JJA limits restitution to "easily ascertainable damages for injury to or loss of property, actual expenses incurred for medical treatment for physical injury to persons, lost wages resulting from physical injury, and costs of the victim's counseling reasonably related to the offense." RCW 13.40.020(26).[3]

The sentencing court has discretion to determine the amount, terms, and conditions of the restitution. State v. Bennett, 63 Wn. App. 530, 532, 821 P.2d 499

---

[3] Because decisions interpreting the Sentencing Reform Act of 1981 (SRA) may be used in cases arising under the JJA where there is no contrary intent, we use SRA case law for guidance as well as cases arising under the JJA. State v. P.B.T., 67 Wn. App. 292, 302, 834 P.2d 1051 (1992). The definition of restitution in the SRA is very similar to the definition of restitution in the JJA and does not suggest contrary intent. Compare RCW 9.94A.750(3), with RCW 13.40.020(26).

(1991). Restitution orders are reviewed for abuse of discretion. Id. at 533. An abuse of discretion occurs when a restitution order is manifestly unreasonable or the court exercises its discretion on untenable grounds or for untenable reasons. State v. Smith, 33 Wn. App. 791, 798-99, 658 P.2d 1250 (1983).

Restitution awards must be based on a causal relationship between the offense charged and proved and the victim's losses or damages. State v. Keigan C., 120 Wn. App. 604, 607-08, 86 P.3d 798 (2004), aff'd sub nom, State v. Hiett, 154 Wn.2d 560, 115 P.3d 274 (2005). The State is not required to prove loss beyond a reasonable doubt or by clear and convincing evidence. Bennett, 63 Wn. App. at 535. The victim need only present evidence that affords a reasonable basis for establishing the loss and does not subject the trier of fact to mere speculation or conjecture. Id. Once the State establishes the fact of damage, the amount need not be shown with mathematical certainty. State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984). If the defendant disputes facts relevant to a restitution award, the State must prove damages by a preponderance of the evidence. State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005).

E.B.G. argues that the evidence the State presented in support of Oliver's restitution claim failed to supply a reasonable basis for estimating loss and required the juvenile court to engage in speculation or conjecture. E.B.G. does not challenge the causal connection between the burglary and the missing and damaged items. He contests only the sufficiency of the evidence concerning the amount of damages.

E.B.G. argues that the State provided nothing more than a rough estimate of the costs associated with the loss. He contends, without explanation, that this case is like State v. Kisor, 68 Wn. App. 610, 844 P.3d 1038 (1993). In Kisor, the defendant shot a police dog. Id. at 612-13. The restitution award was based upon an affidavit, which contained the declaration of a county risk manager estimating the costs associated with purchasing a new animal and training it. Id. at 620. The Kisor court concluded that the affidavit was not substantial credible evidence, because there was no indication of where the risk manager obtained the figures. Id.

Here, by contrast, the court had much more evidence than an unsubstantiated affidavit. A review of the record indicates that the juvenile court considered Oliver's loss claim, Homesite's accounting and subsequent payment of Oliver's claim, and testimony from Oliver at the restitution hearing about how he obtained his estimates. The evidence provided in the restitution hearing is more similar to what was provided to and found to be sufficient by the juvenile court in Bennett.

In Bennett, the victim provided the juvenile court a list of stolen items along with insurance company worksheets to prove the amount of damages. 63 Wn. App. at 535. The Bennett court found that evidence sufficient and specifically noted, " 'We perceive no reason to question the reliability of the insurance company's accounting of [the victim's] loss, given an insurer's strong financial interest in not overpaying claims.' " Id. at 535 n.4.

Here, although the policy limits on Oliver's home insurance reduced the amount Homesite was able to pay Oliver, Homesite reviewed each claimed item and provided an actual cash value loss for each claimed item. With the exception of deducting for depreciation on a few items, Homesite accepted all of Oliver's estimated cash values when calculating the actual cash value loss.

This evidence provided a reasonable basis to establish loss. Thus, even if the juvenile court had awarded Oliver all of the damages accepted by Homesite in its accounting, E.B.G. fails to show that the juvenile court would have abused its discretion. But, here, the juvenile court exercised its discretion and elected to require more than just the insurance documentation to substantiate Oliver's claim regarding the $2,000 loan, the $5,200 in cash unemployment benefits, and the replaced car keys. And, without the extra documentation it denied restitution for those claims. It also exercised its discretion by ordering restitution in a lower amount for the lion's head ring.

E.B.G. argues that the discrepancy in the value of the lion's head ring along with Oliver's refusal to substantiate his assertions means that the juvenile court should have questioned Oliver's veracity with regard to the value of the other stolen items too. In so arguing, E.B.G. implies that the juvenile court erred when it concluded that the evidence was sufficient for only certain items. E.B.G. provides no support for his assertion that the juvenile court abused its discretion when it elected to require additional substantiation for some items and not others. Moreover, although Oliver's testimony led the juvenile court to question the

evidence as to some of the items, the court clearly found Oliver's testimony—combined with the insurance documentation—about his estimates credible as to the remaining items. Credibility determinations are for the trier of fact and cannot be reviewed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

E.B.G. also argues that the juvenile court erroneously shifted the burden of proof to E.B.G. to disprove the State's restitution claim. While it was making its oral ruling, the court stated, "Also, I had no controverting evidence from either of the respondents saying we didn't take this stuff, which of course would come down to a pure credibility call."

E.B.G. argues that this was an improper application of the law, because the State bears the burden of proving restitution by a preponderance of the evidence. E.B.G. cites to State v. Dedonado, 99 Wn. App. 251, 256-57, 991 P.2d 1216 (2000) to support his assertion. But, Dedonado is distinguishable. There, the trial court concluded that the State did not meet its burden of proving the restitution amounts by a preponderance of the evidence, because the documentation it provided did not establish a causal connection between the defendant's actions and the damages. Id. at 257.

Here, at the restitution hearing, the defendants focused their argument on whether the State carried its burden as to the value of the items, not whether there was a connection between the burglary and the loss or damage to Oliver's property. Thus, rather than shifting the burden away from the State, the juvenile

court was merely commenting that whether the losses were related to the crime charged had not been controverted. The only question before it was the sufficiency of the evidence as to the value of Oliver's losses. In fact, the juvenile court ultimately concluded that the "State has carried its burden with respect to the vast majority of [the] items." The juvenile court did not erroneously shift the burden of proof.

We affirm.

Appelwick, J.

WE CONCUR:

Cox, J.