[No. 17573–4–I.  Division One.  May 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
CHRISTOPHER LYNCH, *Appellant.*

*Anthony Savage,* for appellant.

*John Christopher Lynch,* pro se.

*Norm Maleng, Prosecuting Attorney,* and *Robin E. Fox, Deputy,* for respondent.

BAKER, J.—John C. Lynch appeals his conviction for two counts of first degree robbery and one count of being armed with a deadly weapon at the time of the robbery. Counsel on appeal assigns error to the trial court's ruling which allowed evidence of two additional robberies under ER 404(b). Lynch submits a pro se brief in which he makes additional assignments of error. We affirm.

## I
### FACTS

At approximately 5 p.m. on a Saturday, Steven Erickson and Kathy Yeager, employees of Albertson's grocery store in Bellevue, Washington, went by car to the night deposit box of a branch of People's Bank in Bellevue. Their purpose was to make a deposit of receipts from Albertson's. Upon their arrival, Erickson and Yeager noticed a man near the night deposit box who appeared to be wearing a wig. A red 10–speed bicycle was leaning against a planter nearby. Erickson waited in the car while the man finished and walked away with his bicycle.

Erickson then approached the deposit box and tried to open it, but the key would not go in. At the same time, he heard someone say, "Stop where you are." Erickson turned around and saw standing 3 to 4 feet away from him the same man he had previously observed. The man told him to drop his money bag, and displayed what appeared to be a .38 caliber revolver in his waistband. The weapon appeared to be a bluish color with a dark wood grip. Erickson dropped the bag. The man then demanded the keys to Yeager's car. Erickson obtained the keys and handed them to the man, who then started to leave with his bicycle.

Immediately after the first robbery, a car driven by Robin Lake, in which Patti Tibbetts was a passenger, arrived at the bank. Lake and Tibbetts, employees of a restaurant in Bellevue, were also at the bank for the purpose

of making a deposit of receipts. Lake left the car to approach the deposit box and heard someone order her to "[d]rop it." She turned and saw a man wearing what looked like a bushy, brown wig and eyeglasses, who gestured toward a gun in his waistband. She dropped the bag. The man took the bag, went over to the car, took the keys from Tibbetts, and left on a red 10–speed bicycle. This second robbery was observed by Erickson and Yeager.

Erickson and Yeager identified Lynch in a photographic montage and at trial as the man who had robbed them. Erickson was over 95 percent certain of his in–court identification; Yeager was 97 percent certain of hers. Neither Lake nor Tibbetts was able to identify Lynch in the photo montage they were shown.

The State presented additional testimony, over objection, from three victims of two separate robberies that occurred in Los Angeles and Portland, Oregon. An employee of a Pic 'n' Save store in Los Angeles testified that after closing on a Saturday, she was robbed of store receipts at a night deposit box. The deposit box lock was jammed. The robber took a gun out of a small yellow bag, displayed it to her, and put it in his waistband. He wore sunglasses and had brown hair. Later in the day she saw the robber riding a red 10–speed bike. She identified the stolen Pic 'n' Save checks which were later found in Lynch's motorhome.

A manager of an Albertson's grocery store in Portland, Oregon, testified that on a Saturday evening, he and another employee were robbed while attempting to make a night deposit. The robber wore a brown wig, rode a 10–speed bicycle, and pulled a gun from his waistband. After taking the money, he grabbed the keys to the victims' vehicle and left on a bike. The victims chased the robber and caught up with him in a nearby parking lot where he had fallen off his bike. As they approached, they saw his hat and a wig on the ground near him. The manager made an in–court identification of Lynch as the robber, and stated he was 100 percent certain of his identification.

The other Albertson's employee testified in accord, and added that he observed the robber standing and working with the deposit box when they arrived, that the color of his bicycle was red, and that the gun used was a .38 revolver. Before the robber pointed the gun, he displayed it in his waistband. This witness also made an in-court identification of Lynch as the person who robbed him, stating that his certainty was 100 percent.

The jury was instructed that the testimony of the out-of-state victims was to be considered "only for the limited purpose of determining whether it tends to prove defendant's identity and/or a common plan or scheme."

After Lynch was arrested for the Portland robbery, he telephoned friends in Washington, Jeff and Patricia Tassin, told them the location of his motorhome in Oregon, and described how to enter the home. Although Lynch's instructions were vague and confusing, Jeff Tassin believed that Lynch was asking him to take care of the home and deliver it to a Mr. Johnston of Tacoma.

Tassin and a friend drove to Oregon and entered the motorhome. They retrieved the vehicle's keys as instructed from a pair of pants inside the home. They also looked at a wallet found in the pants and saw a driver's license in the name of John Lou Williams. They then became confused and believed they were in "over [their] heads". They decided to drive to an attorney's office in Tacoma, where they turned over to him certain things they found in the vehicle, including a notebook, some bullets, some Pic 'n' Save checks, bags of car keys, a gun box, and a wig. The attorney contacted the Tacoma Police Department, and the items were turned over to a detective. The detective never entered the motorhome.

Lynch's defense to the Bellevue robberies was alibi. He testified that at the time of the crimes, he was at the shop of Mr. Lyle Johnston of Tacoma helping him make repairs to a motorhome and a car. Johnston and his wife both testified consistent with Lynch's alibi. Lynch further testified that he had not intended that Tassin should enter his

motorhome, but had instructed Patricia Tassin to tell Johnston to retrieve the motorhome from Oregon.

The jury found Lynch guilty of both robbery counts and of the deadly weapon enhancement as to count one.

## II
### ER 404(b) RULING

Lynch contends the trial court erred in admitting the evidence of the Los Angeles and Portland robberies since other means of proof were available to show identity and since the prejudice to him outweighed the probative value of the evidence. The State replies that the evidence was properly admitted for the limited purpose of proving identity and a common plan.

The admission or refusal of evidence lies largely within the sound discretion of the trial court, and will be reversed only upon a showing of abuse of discretion. *Maehren v. Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied*, 452 U.S. 938 (1981).

ER 404(b) provides that evidence of other crimes is not admissible to prove the character of a person to show that the person acted in conformity with his character, but is admissible for other purposes, including plan and identity. *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984), *overruled on other grounds in State v. Brown*, 113 Wn.2d 520, 529, 782 P.2d 1013, 787 P.2d 906 (1989).

The first step the trial court must take in determining whether evidence of other crimes or acts is admissible for a proper purpose is to consider the relevance of the evidence. *State v. Mutchler*, 53 Wn. App. 898, 901, 771 P.2d 1168, *review denied*, 113 Wn.2d 1002 (1989) (citing *State v. Saltarelli*, 98 Wn.2d 358, 361, 655 P.2d 697 (1982)). Evidence is relevant if the identified fact for which it is to be admitted is of consequence to the action and if it tends to make the existence of the identified fact more or less probable. *State v. Mutchler, supra*; ER 401. After the trial court determines that evidence is relevant, it must then balance the probative value of the evidence against its

prejudicial effect. *State v. Mutchler, supra*; ER 403. If the evidence is admitted under ER 404(b), the trial court should explain the purpose for which it was admitted to the jury, and give a cautionary instruction to consider it for no other purpose. *State v. Brown,* 113 Wn.2d at 529.

Here, the trial court determined that the evidence of the Los Angeles and Portland robberies was admissible only for the purpose of showing identity and/or a common plan or scheme. The jury was so instructed over Lynch's objection.

The common plan or scheme exception, however, refers to a larger criminal design of which the charged crime is only one part. *State v. Bowen,* 48 Wn. App. 187, 192, 738 P.2d 316 (1987). The scope of the common plan exception is limited to evidence showing a causal connection between the other crime or act and the charged crime,

> so that proof of the other offense could be said to evidence a pre–existing design, system, plan, or scheme directed toward the doing of the very act charged.

*Bowen,* 48 Wn. App. at 192 (quoting *State v. Goebel,* 40 Wn.2d 18, 21, 240 P.2d 251 (1952)); *see also State v. Harris,* 36 Wn. App. 746, 751, 677 P.2d 202 (1984).

■ The common plan exception is to be distinguished from the "modus operandi" or "signature" exception. The primary purpose of the latter principle is to corroborate the identity of the defendant where the facts of both crimes are "so similar and peculiar in nature as to show a modus operandi". *State v. Whalon,* 1 Wn. App. 785, 792, 464 P.2d 730, *review denied,* 78 Wn.2d 992 (1970). Simple resemblance between the prior crimes and the charged crime is not sufficient. "'The device used must be so unusual and distinctive as to be like a signature.' E. Cleary, *McCormick on Evidence* § 190, at 449 (2d ed. 1972)." *State v. Jenkins,* 53 Wn. App. 228, 236, 766 P.2d 499, *review denied,* 112 Wn.2d 1016 (1989). Whether the other crimes or acts are similar enough to the charged crime to justify admission is left to the discretion of the trial court. *State v. Jenkins, supra.*

The trial court erred here in admitting the evidence on the basis of the common plan or scheme exception. However, the evidence supports the trial court's exercise of its discretion in determining that the evidence was relevant to show identity. The unusual and distinctive devices employed in the course of the charged crime and the other crimes are numerous here. They include the wearing of a brown wig, the apparent tampering with or at least activity at the deposit box prior to the victim's approach, the late Saturday afternoon timing, the use of a red 10–speed bicycle, displaying to the victims a gun tucked in a waistband, and obtaining the car keys of the victims. Thus, the trial court did not abuse its discretion in determining that the evidence of the Los Angeles and Portland robberies was relevant. The evidence was of consequence to the determination of the action in that it made more probable the fact that the identity of the Bellevue robber was Lynch.

After determining that the evidence was relevant, the trial court balanced the probative value of the evidence against its prejudicial effect. The trial court held that the probative value was greater since "other means of providing this proof [are] not available to the State in sufficient quantity . . . [and] the need for the use of this evidence is strong and important to the State's case." The trial court was apparently referring to the inability of the Gulliver's employees to identify Lynch, which weakened the State's case. We also note that the motion to admit the evidence was made prior to trial, when the State did not know it would have the strong in–court identification testimony of the Albertson's employees. Prior to trial, the State knew only that it had the evidence of the two photographic identifications to place against Lynch's two alibi witnesses.

It is clear that the evidence was extremely prejudicial to Lynch. It may have been preferable to keep out the evidence until the full strength of the State's case was revealed at trial, but Lynch did not at any time object to the order of presentation of the evidence. We hold that the trial court

did not abuse its discretion in admitting the evidence or in instructing the jury. *See State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Affirmed.

Since the remainder of this opinion has no precedential value, it will not be published. *See* RCW 2.06.040; CAR 14.

SCHOLFIELD and FORREST, JJ., concur.

Review denied at 115 Wn.2d 1020 (1990).