[No. 60808-3. En Banc. September 22, 1994.]

RANDY HUME, ET AL, *Respondents*, v. AMERICAN
DISPOSAL COMPANY, ET AL, *Appellants*.

*William T. Grimm* and *Davis, Grimm & Payne*, for appellants.

*Lawrence Schwerin* and *Schwerin, Burns, Campbell & French*, for respondents.

[As amended by order of the Supreme Court October 27, 1994.]

DOLLIVER, J. — The Defendants, American Disposal Company, D.M. Disposal Company, and Murrey's Disposal Company, are commonly owned and controlled refuse collection companies engaged in business in Pierce County. Former employees of the Defendants, Randy Hume, Chris Davies, Michael Rogge, and Robert Taylor, bring this cause of action, alleging harassment and constructive discharge in violation of public policy. The crux of the employees' claims is that the Defendants retaliated against them for demanding overtime pay. In addition, Taylor claims handicap discrimination and, along with Davies, claims age discrimination.

Each of the Plaintiffs worked as route drivers for the Defendants, collecting residential and commercial waste. Until September 1988, the Defendants' policy was rather informal. They had no time clock and generally paid route drivers for 40 hours per week regardless of how many hours they worked. Although some routes could be completed in less than 40 hours, the drivers found that even without lunch breaks, some routes consistently required more than 40 hours.

In August 1988, after learning they were entitled under state law to be compensated, each of the Plaintiffs began to record and turn in overtime. Meanwhile, in July 1988, the State Department of Labor and Industries had begun investigating complaints of unpaid overtime claimed by route drivers not plaintiffs in this case. The investigation was concluded in September when it was discovered that several of the Defendants' employees were owed overtime compensation. The Defendants settled these claims, changed their overtime policy, and installed a time clock for the drivers. At the same time, however, they instituted a stricter morning schedule and a rule forbidding the drivers to talk to each other on company property.

Although the overtime claims by the drivers in this case were not the direct focus of the state investigation, the result of the investigation had an impact on them, as the relationship between the Defendants and their employees continued to deteriorate. At trial, the Plaintiffs presented evidence that when they submitted overtime requests, they, along with other drivers, began to suffer verbal abuse and threats. They also began to receive unwarranted warning letters, some threatening termination if they did not complete their routes within the scheduled 40 hours. When approached by the drivers, the Defendants refused to shorten the routes. In fact, three of the Plaintiffs testified that their routes were actually enlarged after they complained. The harassment continued until the Plaintiffs eventually left their employment in 1989.

The jury agreed that the Plaintiffs were wronged, returning a verdict in favor of all four Plaintiffs on their wrongful harassment claims and in favor of all Plaintiffs except Rogge on their constructive discharge claims. The jury also returned a verdict for Taylor on his age discrimination claim, but rejected Davies' age discrimination claim. Damages awarded to the Plaintiffs total $141,726.

The Defendants appeal the verdict on several grounds. They also challenge the trial court's award of $169,465 in attorney fees and $45,663 for costs. Plaintiff Taylor cross-

appeals the trial court's dismissal of his handicap discrimination claim. We review this case on certification from Division Two.

I

RCW 49.46.100 prohibits employer retaliation against employees who assert wage claims, and we have held employers who engage in such retaliation liable in tort for violation of public policy under this provision. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). The Plaintiffs invoke this provision and seek damages for harassment and constructive discharge they claim they suffered as retaliation for requesting overtime pay from their former employers. Defendants argue, however, that the claims are preempted by federal labor law and are subject only to the jurisdiction of the National Labor Relations Board. We disagree.

Preemption is a purely jurisdictional issue, and its inquiry focuses on congressional intent. *See International Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 391, 90 L. Ed. 2d 389, 106 S. Ct. 1904 (1986). Congress has long exercised its power to regulate labor relations, and the United States Supreme Court, interpreting Congress' actions in the context of federal labor law, has articulated three branches of preemption. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, gives the federal courts jurisdiction over lawsuits arising from collective bargaining agreements. The *Machinists* doctrine preempts any attempt by the state to regulate activity that Congress intentionally left unregulated. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Empl. Relations Comm'n*, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976). The *Garmon* doctrine operates to preempt claims based upon a state law which attempts to regulate conduct that is arguably either prohibited or protected by the National Labor Relations Act. *See San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959). Only the *Garmon* doctrine is at issue in this case.

 In the National Labor Relations Act (NLRA) Congress has provided for centralized administration of its labor policies by creating the National Labor Relations Board (NLRB) and giving it broad authority. The Supreme Court has reinforced this structure by developing the *Garmon* rule that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. Section 7 of the NLRA, 29 U.S.C. § 157, gives employees the right "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . .." Section 8(a) of the NLRA, 29 U.S.C. § 158(a), identifies as unfair labor practices an employer's interference with, restraint, or coercion of employees engaging in concerted activity or exercising rights guaranteed in section 7. Thus, when it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by section 7 or· are prohibited by section 8, regard for the federal scheme requires that state jurisdiction must yield. *Garmon*, 359 U.S. at 244.

The Supreme Court has refused, however, to apply the *Garmon* guidelines in a literal, mechanical fashion stating that

> inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.

*Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 302, 51 L. Ed. 2d 338, 97 S. Ct. 1056 (1977). *See also Sears Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters*, 436 U.S. 180, 188, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978). The Court has also recognized two exceptions to the basic *Garmon* doctrine. Preemption of state jurisdiction is not required "where the activity regulated was

a merely peripheral concern of the Labor Management Relations Act", or "where the regulated conduct touch[es] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [it] could not [be inferred] that Congress had deprived the States of the power to act." (Footnote and citation omitted.) *Garmon*, 359 U.S. at 243-44.

We begin our analysis of the case at hand with a reiteration of our general prejudice against preemption. Federal preemption can often produce a harsh result, and we are hesitant to find no state jurisdiction absent clear congressional intent. We also note that we are not convinced the statute at issue in this case attempts to regulate the employees' "protected concerted activities" under the NLRA. Although filing overtime grievances may be "protected activity" under the NLRA, the Washington statute does not attempt to regulate employee grievance procedures. Rather, the statute regulates employer actions by prohibiting retaliatory discharge. We ultimately find, however, that the employer retaliation regulated by the statute in this case touches a deeply rooted local concern and, therefore, falls under an exception to the *Garmon* doctrine.

In making this determination, we examine several factors, including the nature of the federal and state interests in regulation, the potential for interference with federal regulation, the differences between the NLRB proceeding and the state law action, and the available remedies. *Farmer*, 430 U.S. at 298, 300. In balancing the state's interest of protecting the relationship between employer and employee against the potential of interference with the federal regulatory scheme, we find such interference unlikely.

Claiming that such interference is unavoidable, the Defendants cite to several cases in which the NLRB has exercised jurisdiction over disputes involving claims for unpaid overtime. However, while it is clear that an NLRB inquiry would focus on whether the Plaintiffs' overtime wage claims were protected "concerted activity", the state cause of action focuses instead on whether the employees were dis-

charged in retaliation for their overtime claims. Thus, the controversy presented to the state court is different from that which could have been, but was not, presented to the NLRB. In such instances state jurisdiction is proper. *See Hanson v. Tacoma*, 105 Wn.2d 864, 869, 719 P.2d 104 (1986). *Cf. Campbell v. Lockheed Shipbuilding & Constr. Co.*, 56 Wn.ʼ App. 641, 785 P.2d 459 (1990), *review denied*, 116 Wn.2d 1004 (1991).

Furthermore, we reject the Defendants' argument that Washington's statute prohibiting retaliation for wage claims attempts to regulate activity protected under the NLRA. Even if asserting wage claims is protected concerted activity under the NLRA, the statute does not directly regulate this activity. If anything, the statute regulates employer activity prohibited by the NLRA and, thus, is less likely to interfere with the federal scheme and require preemption under the *Garmon* doctrine. *See generally Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters, supra* at 200.

Finally, we emphasize that RCW 49.46.100 contains a clear legislative expression condemning retaliation by an employer against an employee who asserts a claim for overtime pay as contrary to the public interest. As we recognized in *Thompson v. St. Regis Paper Co., supra*, the tort of discharge against public policy was designed to balance the interests of both the employer and employee and to vindicate an important public policy. The Plaintiffs' claims are based upon a statute which reflects a legitimate local concern rooted in a strong and clearly articulated public policy.

We find, therefore, that this cause of action falls under an exception to the *Garmon* preemption rule and that the trial court properly exercised jurisdiction over these claims.

## II

The Defendants also challenge the harassment and constructive discharge verdicts on the ground that they are based on insufficient and improperly admitted evidence.

The Defendants argue that the trial court erred in admitting testimony of nonplaintiffs Jerry A. Doty, Wesley Lantz,

Jr., and Larry Schwerzler, former employees of the Defendants. In support of this assertion, the Defendants cite to a Sixth Circuit case in which the testimony of nonplaintiff employees was improperly admitted because it did not concern similar conduct by the employer and because it was not offered as proof of pattern. *See Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988). In our view, the trial court correctly found that the testimony of the former employees regarding their experiences with the Defendants was relevant to the issue of the Defendants' intent, plan, and pattern regarding the alleged harassment.

The admission or refusal of evidence lies largely within the sound discretion of the trial court and will only be reversed upon a showing of abuse of that discretion. *Maehren v. Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied*, 452 U.S. 938 (1981); *State v. Lynch*, 58 Wn. App. 83, 792 P.2d 167, *review denied*, 115 Wn.2d 1020 (1990). Defendants have made no such showing, and we find no error.

Furthermore, we reject the Defendants' contention that the harassment and constructive discharge verdicts are not supported by substantial evidence. The record contains ample evidence from which the jury could infer harassment and constructive discharge, including the testimony of each Plaintiff. We affirm the verdict.

### III

Next, we consider Taylor's age discrimination claim. The Defendants contend that the trial court erred when it denied their motion for dismissal at the close of Taylor's case. By presenting evidence in their own behalf, however, the Defendants waived any error regarding that motion. *See Carle v. McChord Credit Union*, 65 Wn. App. 93, 97 n.3, 827 P.2d 1070 (1992); *Goodman v. Bethel Sch. Dist. 403*, 84 Wn.2d 120, 123, 524 P.2d 918 (1974); *Jones v. Bard*, 40 Wn.2d 877, 880, 246 P.2d 831 (1952). The Defendants also contend that the trial court erred by failing to grant their motion for a judgment notwithstanding the verdict. They argue that Taylor produced no evidence from which the jury

could reasonably find that they intentionally discriminated against Taylor on the basis of his age. Although Taylor urges otherwise, we find this issue to be properly before the court because the Defendants have assigned error to the trial court's denial of their motion for judgment n.o.v., and they argue the relevant legal points in their brief complete with citations to authority and the record. We review the issue and find there is no substantial evidence to sustain the verdict in favor of Taylor on his age discrimination claim.

■■ In reviewing a denial of a motion for judgment n.o.v., we apply the same standard as the trial court and reverse only if we can say, as a matter of law, that the evidence is insufficient to support the verdict. *Industrial Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990). To question the sufficiency of the evidence is to question whether the burden of production has been met, and when this burden has been met, the evidence is sufficient. *See Carle*, 65 Wn. App. at 98.

■ In an age discrimination case, the burden of production is divided into three stages, patterned after *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). First, the Plaintiff must produce evidence to support findings that he (1) was between 40 and 70 years old, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by a younger person. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988); *Carle*, 65 Wn. App. at 99. Evidence of these elements creates a rebuttable presumption of age discrimination. Second, the Defendant has the opportunity to rebut this presumption of discrimination with evidence that the discharge was for nondiscriminatory reasons. *Carle*, 65 Wn. App. at 100. If the Defendant meets this burden, the third prong of the *McDonnell Douglas* test requires the Plaintiff to produce sufficient evidence that Defendant's alleged nondiscriminatory reason for discharge was a pretext. *Grimwood*, 110 Wn.2d at 364; *Carle*, 65 Wn. App. at 101. "When all three facets of the burden of production have been met,

the case must be submitted to the jury." *Carle*, 65 Wn. App. at 102.

The first and second facets have clearly been met in this case. Taylor produced evidence that he was over 40 when he left his employment with the Defendants, that he was doing satisfactory work, and that he was replaced by younger workers. He also presented evidence that he suffered harassment by his employer that eventually caused him to leave his job. Taylor claims this harassment was part of a larger plan to eliminate older workers from the Defendants' employ.

The Defendants responded that the actions allegedly driving Taylor to quit his job were not motivated by age discrimination. To counter Taylor's assertion that they deliberately maintained an unreasonable work schedule designed to shake out older workers, they produced testimony and evidence that their overall routes' lengths were reasonable for the industry and that Taylor himself completed his route schedule in an average of less than 40 hours per week from September 1988 through July 1989. They also testified that the warning letters issued to Taylor were part of a legitimate employee disciplinary procedure, pointing out that Taylor never received any written reprimands for not completing his routes on time. In addition, they also testified at trial that they employed 10 drivers over 40 and 2 drivers over 50.

The critical issue, then, is whether Taylor produced sufficient evidence of discriminatory intent. His evidence must be sufficient to create a genuine issue of material fact that the Defendants' articulated reasons were a pretext for a discriminatory purpose. *Grimwood*, 110 Wn.2d at 364; *Carle*, 65 Wn. App. 101 n.11. Taylor may do this either directly or indirectly.

In age discrimination cases, a plaintiff may demonstrate pretext or discriminatory intent by showing disparate treatment or disparate impact. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 909, 726 P.2d 439 (1986). Both parties agree that the theory of

this case is disparate treatment, not disparate impact. Thus, in order to meet his burden, Taylor must produce evidence that he was treated differently than younger employees. We note that in considering whether he met this burden, we view the evidence in a light most favorable to Taylor. *Kallevig*, 114 Wn.2d at 915.

Taylor's claim of discriminatory intent essentially rests on the fact that the Defendants knew the pace of the routes was too much for the older workers and that if the routes were not restructured the older workers could not make it to retirement age. Taylor's evidence includes expert testimony that the Defendants' route lengths were longer than the industry standard, testimony that the Defendants fired a fellow employee, Jerry Doty, after having received a medical opinion that Doty was unable to finish his routes on time because of his age, and testimony that vice president Hawkins knew that age was a factor for some employees who were having trouble finishing their routes on time. Even this knowledge, however, is insufficient to demonstrate disparate treatment on the basis of age.

Taylor attempts to base his age discrimination case on the fact that the Defendants knew his age would eventually prevent him from being able to perform his job. This simply does not constitute age discrimination. There is insufficient evidence from which a jury could infer that the Defendants treated Taylor differently than younger workers or that they intended to discriminate against him on the basis of his age because Taylor's evidence shows the routes for all the employees were of comparable length and employees of all ages received warning letters. At most, his evidence would be relevant to an age discrimination case based on adverse impact, a theory under which an employer's facially neutral policy is discriminatory because it improperly impacts a protected group of employees. This theory, however, was not argued to the trial court, and the evidence presented in this case does not establish a complete adverse impact claim.

We find that Taylor failed to produce sufficient evidence of the Defendants' intent to discriminate against him on the basis of his age. We, therefore, reverse the trial court's denial of the Defendants' motion for judgment n.o.v. on Taylor's age discrimination claim.

## IV

In 1973, the Washington Legislature amended its Law Against Discrimination to include a prohibition against employment discrimination based on physical, mental, or sensory handicaps. *See* RCW 49.60.180. Under this provision, Taylor claims that the Defendants unlawfully discriminated against him. The trial court dismissed Taylor's handicap claim at the close of his case, noting that Taylor had not produced sufficient evidence that his condition constituted a "handicap" or that the Defendants had sufficient notice of his condition to be held liable for handicap discrimination. We agree that Taylor failed to present a prima facie case of handicap discrimination and, therefore, affirm the trial court.

Washington's antidiscrimination statute does not define "handicap" but we have adopted the definitions promulgated in WAC 162-22-040. *See Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 16, 846 P.2d 531 (1993). To be considered "handicapped" for the purposes of an unfair labor practices claim, a plaintiff must show "both (1) the presence of an abnormal condition, and (2) employer discrimination against the employee plaintiff *because* of that condition." *Doe*, 121 Wn.2d at 16. Although the question of whether an individual is "handicapped" under RCW 49.60 is one of fact for the jury, *Phillips v. Seattle*, 111 Wn.2d 903, 909-10, 766 P.2d 1099 (1989), the issue may only be properly submitted to the jury if supported by sufficient evidence.

The bulk of Taylor's evidence goes to establish that he suffered from an abnormal condition under WAC 162-22-040. Taylor relies on the testimony of his family physician, Dr. Stephen Egge, that he was suffering from "overuse syndrome" in his hands as early as 3 years before he left his employment

and that Dr. Egge diagnosed him with "mild carpal tunnel" syndrome in July 1989, approximately 1 month before Taylor left his employment with the Defendants.

Defendants argue that "overuse syndrome" is too vague to be classified as a "medically cognizable or diagnosable" condition under WAC 162-22-040(1)(b)(i). They also argue they had no reason to know Taylor might be handicapped. Although Taylor had made intermittent complaints of pain in his hands, he submitted official medical reports to the Defendants in 1986 and 1988 indicating he suffered from no medical conditions. While Taylor was diagnosed and treated for carpal tunnel syndrome after he left his employment, he did not seek medical treatment for his hands from October 1988 until July 1989. There is no evidence that Taylor discussed the results of his July 1989 medical visit with the Defendants.

On this issue of notice, Taylor argues that the Defendants should be held liable regardless of whether they had specific notice his condition met the WAC definition of a handicap condition. In his support, Taylor cites *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989), *cert. denied*, 498 U.S. 814 (1990). "As long as the employer is on notice that an employee suffers from a serious medical condition, it may be liable under the handicap discrimination law." *Kimbro*, 889 F.2d at 877 n.6. We find, however, that the evidence, viewed in the light most favorable to Taylor, is insufficient to establish such notice to the Defendants.

Unlike Taylor, the employee in *Kimbro* had missed work several times with severe migraines and had discussed the severe nature of his condition with his supervisors. Because the employer's knowledge of the employee's medical condition was clear, the court found that it had notice of the handicap, even though the employer did not know that severe migraines constituted a handicap under Washington law. *Kimbro*, 889 F.2d at 876-77. In this case, however, Taylor produced no evidence that the Defendants knew or had reason to know that his hand discomfort constituted a serious medical condition.

Although Taylor testified that he complained about pain in his hands and requested transfer to a position that would not require him to use his hands as much, there is no evidence that he specifically discussed the nature of his condition with his employer at the time he made the requests. Similarly, the union representative who contacted the Defendants to request a transfer for Taylor asked for a job "less stressful" for Taylor's hands without discussing the nature of Taylor's condition. At the time the requests were made, Taylor had not missed any work due to the pain in his hands, and he was successfully completing his routes in less than 40 hours per week. Without deciding whether Taylor's evidence was sufficient to satisfy the first element, we hold this evidence to be insufficient to support a conclusion that the Defendants had notice of Taylor's alleged condition and, therefore, that they discriminated against Taylor because of that condition in violation of RCW 49.60.180. We affirm the trial court's dismissal of Taylor's handicap claim.

V

We next consider the issue of attorney fees. The trial court awarded $169,465 to the Plaintiffs as attorney fees for the successful constructive discharge and age discrimination claims as authorized by RCW 49.48.030 and RCW 49.60.030(2). The Defendants challenge this award as unreasonable, arguing in part that the trial court failed properly to segregate the award. We, therefore, reiterate our previous holdings on segregation of attorney fees.

If, as in this case, an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues. *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 450, 815 P.2d 1362 (1991); *Travis v. Washington Horse Breeders Ass'n*, 111 Wn.2d 396, 410-11, 759 P.2d 418 (1988); *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 66, 738 P.2d 665 (1987); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987); *Fisher*

*Properties, Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986); *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26 (1993).

> [T]he court must separate the time spent on those theories essential to [the cause of action for which attorney fees are properly awarded] and the time spent on legal theories relating to the other causes of action. . . . This must include, on the record, a segregation of the time allowed for the [separate] legal theories . . ..

*Travis*, 111 Wn.2d at 411. Where, however, the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees. *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 447, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992).

As the case stands, attorney fees are recoverable only for the successful constructive discharge claims under RCW 49.48.030. Attorney fees are not recoverable for the harassment claims, Rogge's unsuccessful claim of constructive discharge, both age discrimination claims, and Taylor's handicap discrimination claim. While we recognize that these claims are related and to some extent rest on a common core of facts, we remand the attorney fees award to the trial court for recalculation of trial and appellate attorney fees to reflect our disposition of Taylor's age discrimination claim.

 Finally, we reject Defendants' claim that the trial court erred when it refused to reduce the attorney fee award by the amount of fees contributed to the Plaintiffs by their union. The Defendants' arguments are not convincing. It is unlikely that the Plaintiffs and their attorneys will receive double payment because the union payments will be used to cover fees not recoverable from the Defendants and because the Plaintiffs have agreed to reimburse the union if necessary. Furthermore, because attorney fees are authorized under the remedial statutes to provide incentives for aggrieved employees to assert their statutory rights, it would be counterproductive to reduce attorney fee awards based on union support. *See Holland v. Boeing Co.*, 90

Wn.2d 384, 392, 583 P.2d 621 (1978). The trial court did not abuse its discretion in this matter.

## VI

We next address the issue of costs. The trial court had a costs award to the Plaintiffs totaling $45,663. The Defendants challenge this amount, claiming that the trial court improperly awarded expanded costs to the Plaintiffs without statutory authority. We agree.

Costs have historically been very narrowly defined, and RCW 4.84.010 limits cost recovery to a narrow range of expenses such as filing fees, witness fees, and service of process expenses. *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 743, 733 P.2d 208 (1987). Civil rights cases stand as an exception to this rule because the Legislature has expressly authorized recovery of actual costs of the litigation, including expert witness fees, facsimile and copying expenses, cost of depositions, and other out-of-pocket expenses. *See* RCW 49.60.030(2); *Xieng v. Peoples Nat'l Bank,* 120 Wn.2d 512, 525-30, 844 P.2d 389 (1993); *Blair v. WSU,* 108 Wn.2d 558, 740 P.2d 1379 (1987). Absent a statute that expressly allows expanded cost recovery, however, plaintiffs are not entitled to such generous cost awards. For example, in *Nordstrom, Inc. v. Tampourlos, supra,* we refused to award extended costs to successful plaintiffs under the Consumer Protection Act, finding that an expanded recovery was unwarranted. *Nordstrom,* 107 Wn.2d at 743.

Plaintiffs argue, however, that the cost award is important to provide incentive for plaintiffs who enforce this tort of retaliatory discharge in violation of public policy. Citing our decision in *Blair v. WSU, supra,* the Plaintiffs draw a close analogy between their constructive discharge claims and civil rights claims arguing that an expanded cost award is important to provide an adequate remedy for plaintiffs who succeed in holding their employers liable for violating public policy. They therefore request that this court expand the realm of recoverable costs beyond the statutorily defined costs in RCW 4.84.010 to match the costs available under

Washington's Law Against Discrimination and RCW 49.60.030(2).

Before the federal and state civil rights statutes were amended to make expanded costs available to prevailing plaintiffs, this state, in *Blair v. WSU, supra*, joined the growing trend to allow prevailing civil rights plaintiffs to recover reasonable expenses in addition to the limited costs defined under RCW 4.84.010. *Blair*, 108 Wn.2d at 572-73. Our goal was to enable vigorous enforcement of modern civil rights litigation and to make it financially feasible for individuals to litigate civil rights violations. *Blair*, 108 Wn.2d at 573. We refuse now, however, to extend our reasoning in *Blair* to make expanded costs available outside the civil rights context. Plaintiffs who prevail under the narrow tort of retaliatory discharge in violation of public policy based on RCW 49.46.100 are limited to recovering the narrow statutory costs authorized in RCW 4.84.010.

We, therefore, remand for a recalculation of costs.

## VII

In summary we hold as follows: (1) The trial court properly exercised jurisdiction over the harassment and constructive discharge claims based on RCW 49.46.100 because such claims fall under an exception to the federal *Garmon* preemption doctrine. (2) The trial court did not abuse its discretion in admitting testimony of the Plaintiffs' former co-workers. (3) The harassment and constructive discharge verdicts are supported by substantial evidence. (4) The trial court erred in its denial of the Defendants' motion for judgment n.o.v. on Taylor's age discrimination claim because Taylor failed to produce sufficient evidence of the Defendants' discriminatory intent. (5) Taylor's handicap discrimination claim was properly dismissed for failure to establish a prima facie case. (6) The attorney fees and costs awards must be recalculated to reflect our disposition of Taylor's age discrimination claim. (7) The cost award for tort claims based on RCW 49.46.100 is limited to the statutory costs available under RCW 4.84.010.

The case is remanded to the trial court for further proceedings consistent with this opinion.

ANDERSEN, C.J., and DURHAM, SMITH, GUY, and MADSEN, JJ., concur.

JOHNSON, J. (concurring in part, dissenting in part) — I concur in parts I, II, IV, V and VI of the majority opinion. I dissent, however, to part III, discussing Taylor's age discrimination claim. The majority unnecessarily confuses the standard of review on this issue, and, in doing so, reaches the wrong result.

Taylor's age discrimination claim was tried before a jury and the jury rendered a verdict in Taylor's favor. The trial judge denied Defendants' motion for a judgment n.o.v. on this issue and the Defendants now appeal the trial court's decision. When we review a trial court's decision to deny a motion for judgment n.o.v., we apply the same standard as the trial court. *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992) (quoting *Industrial Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990)). A judgment n.o.v. is appropriate only if, when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is not substantial evidence or a reasonable inference to sustain a verdict for the nonmoving party. *Hizey*, 119 Wn.2d at 271 (quoting *Kallevig*, 114 Wn.2d at 915-16). If the majority had applied this standard, it would have affirmed the judgment of the trial court on this issue.

However, rather than limiting its inquiry to whether the evidence in this case was sufficient to sustain the verdict, the majority confuses the standard of review and instead asks whether Taylor's evidence was sufficient to create a genuine issue of material fact on the issue of discriminatory intent. Majority, at 668. This question is appropriate when we are reviewing a motion for summary judgment, not judgment n.o.v. This error apparently occurred because the

majority relies on *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988), a case involving review of a summary judgment adjudication in an age discrimination case.

Appellate review of summary judgment and judgment n.o.v. are not equivalent, and it is improper to impart the relevant inquiry from one standard of review to another. An appellate court reviewing a motion for summary judgment engages in the same inquiry as the trial court and reviews the motion de novo. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987). When reviewing a motion for summary judgment, the court considers all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Because a grant of summary judgment is an adjudication without a trial, appellate courts must adhere to a stricter standard of review in order to protect a party's right to a trial on the merits.

In contrast, appellate review of a motion for judgment n.o.v. takes place after there has been a full adjudication on the merits. It is no longer the role of the court to evaluate the credibility of the evidence. Nor is it the role of the reviewing court to determine whether it would have reached the same result as the jury, given the facts established at trial. Instead, the sole function of the appellate court when reviewing a motion for judgment n.o.v. is to establish whether "as a matter of law that there is no evidence or reasonable inference therefrom to sustain a verdict for the opposing party". *Miller v. Payless Drug Stores of Wash., Inc.*, 61 Wn.2d 651, 653, 379 P.2d 932 (1963).

Because the majority adopts the analysis in *Grimwood* and applies the standard of review applicable to summary judgment, the majority complicates the review by focusing on the burdens of production in an age discrimination case. In *Grimwood*, we adopted the federal *McDonnell Douglas* test to establish the elements of an employee's prima facie discrimination case and to allocate the procedural burdens of production. *Grimwood*, 110 Wn.2d at 362; *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). This analysis was necessary to establish whether the plaintiff's evidence created a genuine issue of material fact because the nature of the burden establishing nonexistence of a material fact depends on who bears the burden of proof at trial and what standard of proof is required. Jack H. Friedenthal et al., *Civil Procedure* § 9.3, at 445 (2d ed. 1993).

Where, as here, we are reviewing a motion for judgment n.o.v., this analysis is not only unnecessary, it confuses the issue because these allocated burdens are only pertinent at various stages of pretrial and trial proceedings. *Xieng v. Peoples Nat'l Bank,* 120 Wn.2d 512, 522, 844 P.2d 389 (1993). Once there has been an adjudication on the merits,

> issues concerning the employer's burden merge into the ultimate disposition of the issue of discrimination made by the trier of fact.
>
> . . . .
>
> Issues of the plaintiff's prima facie case, the employer's burden to rebut with a legitimate nondiscriminatory reason, and the employee's showing of pretext are irrelevant once all the evidence is in.

(Citations omitted.) *Xieng,* 120 Wn.2d at 522 (quoting *Burnside v. Simpson Paper Co.,* 66 Wn. App. 510, 524, 832 P.2d 537 (1992), *aff'd,* 123 Wn.2d 93, 864 P.2d 937 (1994)).

Thus, our sole focus in this case is whether the evidence presented was sufficient to sustain a verdict in Taylor's favor. I find that it was. Taylor's claim was essentially that his employers deliberately and systematically maintained an unreasonable work schedule that prevented older workers from staying on the job until retirement age. In support of this claim, Taylor presented expert testimony that the Defendants' routes were longer than the industry standard. He further produced evidence that the Defendants fired a fellow employee after having received a medical opinion the employee was unable to finish his routes on time because of his age. Lastly, Taylor produced evidence that the vice president knew age was a factor for some employees who were having trouble finishing their routes on time, but neverthe-

less maintained the route schedules. From this evidence the jury concluded the Defendants discriminated against Taylor based on his age.

Because I believe this evidence is sufficient to establish a claim of age discrimination under RCW 49.60.180, I would affirm the decision of the trial court denying the Defendants' motion for judgment n.o.v.

UTTER and BRACHTENBACH, JJ., concur with JOHNSON, J.

After modification, further reconsideration denied October 27, 1994.