**William DOWNEY, Plaintiff–Appellant,**

v.

**CROWLEY MARINE SERVICES, INC., Defendant–Appellee.**

No. 99–35439.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2000

Filed Jan. 3, 2001

---

4. We express no opinion as to whether any facts exist to support Bly–Magee's contentions.

Jonathan P. Meier, Sirianni & Youtz, Seattle, Washington, for the plaintiff–appellant.

Robert N. Windes, Le Gros, Buchanan & Paul, Seattle, Washington, for the defendant–appellee.

Before: B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER, District Judge.[1]

PER CURIAM:

William Downey appeals from the district court's grant of summary judgment to Crowley Marine Services, Inc. on his claim of employment discrimination in violation of the Washington Law Against Discrimination, Wash. Rev.Code § 49.60.180. We reverse and remand for trial.

I

William Downey began working for Crowley Marine Services ("Crowley") in 1989. In 1991, he took a position as marine operations engineer with Crowley. According to Crowley's job description, as engineer, Downey was responsible, among other things, for "[p]reparation, operation, and maintenance of all vessel machinery and systems through the voyage" of the tug to which he was assigned. The job required strenuous physical activity. Downey's work on the tugs was seasonal, beginning in early spring and ending in mid-fall.

In 1993, Downey was diagnosed with multiple sclerosis ("MS"). Shortly there-

---

**1.** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

after, he informed his immediate supervisor, Jerry Moore, and another supervisor, Don Stoltz, of the diagnosis. When he did so, he told them: "I would inform them if . . . anything progressed or whatever. And I believe I stated at that time that I would be the first one to remove myself from the vessel if I was going to endanger myself or the crew." Later that year, he told his "second-level" supervisor, Mike Demaray, about his MS.

Downey worked the 1993 and 1994 seasons without experiencing any MS-related symptoms. During the 1995 season, however, Downey's MS began to manifest itself. He required hospitalization and took several medical leaves of absence. By fall of 1995, Demaray and other Crowley employees had concluded that Downey would not be able to return to work as a marine operations engineer. Demaray's belief was based on "the conversations that we had had previously in that he said he would tell me when he could no longer perform his job safely, and then when he left Valdez and couldn't go to Prudhoe." In addition, Vickie Grahn, a claims representative at Crowley, wrote to Downey's physicians in early November 1995. She included a job description for the position of marine operations engineer and asked whether Downey's doctors believed that Downey would be able to return to work "without restrictions without risking injury to himself or others." Linda Swartz, Downey's neurologist, wrote back on November 15, 1995, stating that the job description "is *not* in keeping with [Downey's] physical abilities at this time. I in fact do not believe that he would ever be able to return to a position as described in this job analysis." Anne Bidel, Downey's family physician, wrote back on November 20, 1995, with a similar prognosis.

Notwithstanding his deteriorating condition, in October 1995 Downey clearly notified Crowley that he intended to return to work by submitting an "intent to return" form, which was required of all seasonal workers who wished to work the next season. Demaray stated that in the fall of 1995 he knew that Downey wanted to continue working for Crowley in 1996. Similarly, Grahn stated that in fall 1995 she believed that Downey and his wife "wanted Crowley to remain open minded that [Downey] still had the opportunity to return to work." By early 1996, Downey's financial situation was becoming dire because his disability payments terminated and because of costs relating to his wife's cancer treatment. Thus, he wanted to withdraw the funds in his 401(k) account. Downey states that Crowley informed him that he would have to resign in order to withdraw the funds. He did so, effective February 29, 1996.[2] Crowley authorized distribution of his 401(k) funds shortly thereafter.

On February 6, 1998, Downey brought suit against Crowley in King County Superior Court, alleging failure to accommodate and wrongful termination under the Washington Law Against Discrimination, Wash. Rev.Code § 49.60.180, and common law claims for intentional or negligent infliction of emotional distress.[3] Crowley removed the case to the district court for the West-

2. Downey and Crowley dispute whether Crowley led Downey to reasonably believe that it had terminated him in September 1995 and whether Crowley afterwards reassured Downey that it had not fired him. Resolution of this dispute is not material to our analysis.

3. Washington Revised Code § 49.60.180 states:

> It is an unfair practice for any employer:
> (1) To refuse to hire any person because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person, unless based upon a bona fide occupational qualification: PROVIDED, That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved.
> (2) To discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person.

ern District of Washington, asserting diversity as a basis for jurisdiction.[4] Crowley moved for summary judgment, which the district court awarded on Downey's failure to accommodate claim but denied on Downey's wrongful termination claim.[5] Downey later agreed to dismiss, with prejudice, his remaining claim for wrongful termination. The district court entered a judgment for Crowley on April 15, 1999. Downey now appeals the district court's grant of summary judgment to Crowley on Downey's failure to accommodate claim. We have jurisdiction under 28 U.S.C. § 1291.

## II

We review de novo a district court's grant of summary judgment. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir.2000). Thus, in considering a district court's disposition of a motion for summary judgment, we must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). We review de novo a district court's interpretation of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

## III

■ It is well established under Washington law that employers have an "affirmative obligation" to reasonably accommodate handicapped employees. *Pulcino v. Fed. Express Corp.*, 141 Wash.2d 629, 9 P.3d 787, 793 (2000) (en banc); *see Goodman v. Boeing, Co.*, 127 Wash.2d 401, 899 P.2d 1265, 1269 (1995) (en banc); *Doe v. Boeing Co.*, 121 Wash.2d 8, 846 P.2d 531,

537 (1993) (en banc); *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wash.2d 102, 720 P.2d 793, 804 (1986) (en banc); *Dean v. Municipality of Metropolitan Seattle–Metro*, 104 Wash.2d 627, 708 P.2d 393, 399 (1985) (en banc); *Holland v. Boeing Co.*, 90 Wash.2d 384, 583 P.2d 621, 623 (1978) (en banc). The employer's affirmative obligation requires the employer to assist the employee in identifying and applying for an available job for which she or he is qualified: "[I]f a handicapped employee is qualified for a job within an employee's business, and an opening exists, the employer must take affirmative steps to help the handicapped employee fill the position." *Clarke*, 720 P.2d at 804; *see Goodman*, 899 P.2d at 1269; *Dean*, 708 P.2d at 400. It is undisputed that by fall of 1995, Crowley knew that Downey had MS and that his condition had deteriorated to such an extent that he would no longer be able to work as a marine operations engineer. It is also uncontested that Crowley did not take affirmative steps to help Downey identify and apply for Crowley jobs for which he might have been qualified, with or without accommodation. What is at issue is whether Crowley's duty to take "positive steps," *Holland*, 583 P.2d at 623, was triggered under these facts. We conclude that it was.

The Washington Supreme Court has consistently held that an employer's affirmative obligation arises as soon as the employer has notice of the employee's disability. *See Pulcino*, 9 P.3d at 795 ("To trigger the employer's duty of reasonable accommodation, the employee must give the employer notice of his or her disability."); *Goodman*, 899 P.2d at 1269 ("The duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is 'aware of respondent's disability and physical limita-

---

The proviso in subsection one is applied by administrative regulation to cases arising under subsection two. Thus, "an employer may refuse to hire or may discharge a handicapped person, if the handicap prevents the 'proper performance' of the job." *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wash.2d 102, 720 P.2d 793, 802 (1986) (en banc).

**4.** Crowley is a Delaware corporation with its principal place of business in California. Downey is a citizen of Washington.

**5.** The court also dismissed Downey's claims for emotional distress. Downey did not object to the dismissal of those claims.

tions.'" (quoting *Holland,* 583 P.2d at 624)). It appears that the Washington courts have never required that an employee request an accommodation in order for the employer's duty to accommodate to arise. *See, e.g., Curtis v. Security Bank of Washington,* 69 Wash.App. 12, 847 P.2d 507, 511–12 (1993) (holding that where employer knew employee was disabled and where employer eliminated employee's position, employer had a duty to "perform capabilities testing on the open positions, encourage [employee] to apply for the vacant positions she could perform, and affirmatively assist her in applying for those positions," despite the fact that employee "failed to show interest in and apply for open positions"). The Washington cases that Crowley cites for the contrary proposition are inapposite.[6]

Moreover, we have recognized that under the Washington Law Against Discrimination, "an employee's failure to formally request an accommodation—as occurred in this case—does not absolve the employer of its obligation to reasonably accommodate its employees' disabilities." *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 877 n. 7 (9th Cir.1989). The Washington Supreme Court has revisited the Washington Law against Discrimination numerous times since our decision in *Kimbro.* It has twice cited to it. *See Hume v. Am. Disposal Co.,* 124 Wash.2d 656, 880 P.2d 988, 996 (1994) (en banc); *Doe,* 846 P.2d at 538. The Washington Supreme Court has not only cited *Kimbro,* it has never decided a case inconsistent with it.

The district court granted Crowley's motion for summary judgment on Downey's failure to accommodate claim because it concluded that "Downey's statement that he would notify Crowley when his condition deteriorated to the point where he could no longer perform his job led Crowley to reasonably believe that Downey preferred to stay in his present position until he notified Crowley otherwise." However, whether Crowley reasonably believed that Downey preferred to continue working as a marine operations engineer is beside the point. Once Crowley knew that Downey's condition interfered with his ability to work in that position, it had the duty under Washington law to identify available jobs at Crowley that Downey could perform and to help Downey apply for those jobs.[7] The district court, therefore, erred

---

6. The Washington cases Crowley cites stand for the proposition that an employer that is *not* on notice of the employee's disability is not under the affirmative duty to accommodate. *See, e.g., Hume v. Am. Disposal Co.,* 124 Wash.2d 656, 880 P.2d 988, 996 (1994) (en banc) ("Although [the plaintiff] testified that he complained about pain in his hands and requested transfer to a position that would not require him to use his hands as much, there is no evidence that he specifically discussed the nature of his condition with his employer at the time he made the requests."). Crowley also argues that because the cases Downey cites in his opening brief involve plaintiffs who requested some form of accommodation, such a request is a condition of the employer's duty to accommodate. This is a non sequitur.

Crowley cites to federal cases interpreting the Americans With Disabilities Act ("ADA") and the Rehabilitation Act. However, the Washington Law Against Discrimination differs significantly from the ADA and the Rehabilitation Act with regard to the trigger for an employer's duty to accommodate. We have

held that under the ADA an employer's obligation to engage in an interactive process with the employee to find a reasonable accommodation "is triggered by an employee or employee's representative giving notice of the employee's disability and the desire for accommodation." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1114 (9th Cir.2000) (en banc). Moreover, "[i]n circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability, the employer must assist in initiating the interactive process." *Id.* Washington law imposes a heightened duty on employers in that simple notice of an employee's disability is sufficient to trigger an employer's responsibility to accommodate. *See Pulcino v. Fed. Express Corp.,* 141 Wash.2d 629, 9 P.3d 787, 804 (2000) (en banc); *Goodman v. Boeing, Co.,* 127 Wash.2d 401, 899 P.2d 1265, 1269 (1995) (en banc).

7. Crowley argues that the medical leaves it granted Downey sufficiently accommodated his MS. While medical leave might have been an appropriate response to Downey's condi-

in granting Crowley's motion for summary judgment.

### IV

 Crowley's duty to accommodate was triggered by notice that Downey's MS interfered with his ability to perform his job as marine operations engineer. The district court improperly granted Crowley summary judgment on Downey's failure to accommodate claim. Because a genuine issue of material fact remains concerning whether there were jobs available at Crowley which Downey could have performed with or without accommodation, we reverse the district court's grant of summary judgment and remand the case for trial on this issue.

REVERSED AND REMANDED.

tion during the 1995 season, it was no longer adequate once Crowley concluded that Downey would not be able to return to work as an operations engineer. At that point, Crowley was obligated to identify possible jobs which Downey could perform and assist him in applying for those jobs.